(71 South. 521)

No. 20424.

BRISTO v. CHRISTINE OIL & GAS CO.

(April 3, 1916.)

(Syllabus by the Court.)

1. LANDLORD AND TENANT ⚙︎═30 — VENDOR AND PURCHASER ⚙︎═18(1) — REQUISITES OF LEASE—DEFINITENESS.

A lease or an option for an indefinite term is a nudum pactum.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 86, 87; Dec. Dig. ⚙︎═30; Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. ⚙︎═18(1).]

2. MINES AND MINERALS ⚙︎═66 — MINING LEASES—CONSIDERATION.

A stipulation in a mineral lease that the lessee or grantee shall have the right, without any obligation, to prevent a forfeiture of the contract and hold the grantor's land under a perpetual lease or option by paying a stipulated rental annually, is a nudum pactum.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 185, 186; Dec. Dig. ⚙︎═66.]

Appeal from Twelfth Judicial District Court, Parish of De Soto; James G. Palmer, Judge.

Action by Bettie Bristo against the Christine Oil & Gas Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Liverman & Pollock, of Mansfield, and Hampden Story, of Shreveport, for appellant. Elan & Lee, of Mansfield, and J. S. Wheless, of Beaumont, Tex., for appellee.

O'NIELL, J. The defendant has appealed from a judgment annulling a contract purporting to be a sale of the minerals on or in the plaintiff's land and a lease of the land for mining purposes.

The principal features of the contract are these: For and in consideration of the price and sum of $1 paid in cash by the grantee, the plaintiff granted, bargained, sold, and conveyed unto the grantee, and his heirs and assigns, all of the oil, gas, coal, and other minerals in and under the lands described in the contract, together with the right of

ingress and egress at all times for drilling and mining purposes. The grantor was to receive a royalty of one-eighth of whatever oil might be produced, and 4 cents for every ton of coal and a stipulated royalty for each gas well. The grantee reserved the right to remove at any time all machinery, fixtures, and improvements that he might place upon the leased premises. It was stipulated that, in the event the drilling of a well should not be commenced within a year from the date of the contract and prosecuted with due diligence, the grant was to become null and void, provided that the grantee might prevent the forfeiture from year to year by paying to the grantor the sum of 10 cents per acre annually until a well was commenced or until shipments from the mines had begun, which payments might be made at the People's Bank in Mansfield, La. It was stipulated that the completion of a well should operate a full liquidation of all rents, and that, in the event of the discovery of oil or other mineral, the contract should remain in · force 25 years from the date of such discovery, and as long thereafter as the minerals could be produced in paying quantities. The grant was declared to be not a mere franchise, but a conveyance of the land for the purposes mentioned in the contract; and it was also recited in the deed that the rights conferred and obligations imposed upon the parties thereto, respectively, should descend to their heirs, administrators, and assigns.

The contract was signed on the 25th of January, 1911. Nothing whatever was done by the grantee or his assigns in pursuance of the grant, except that on the 24th of April, 1913, the defendant, transferee of the contract, deposited to the credit of the plaintiff in the People's Bank of Mansfield, La., $16, there being 160 acres of land described in the contract. The plaintiff refused to receive the deposit, and 4 months later filed this action of nullity.

The suit was founded principally upon these complaints: (1) That the cash price, $1, paid as a consideration for the pretended sale, was out of proportion to the value of the grant, and that therefore, under the provisions of the Civil Code, the act could not be considered a sale; (2) that the 10 cents an acre stipulated as the consideration to be paid annually for a renewal from year to year, or to prevent a forfeiture, was also entirely out of proportion to the value of the pretended lease; (3) that the agreement contained and depended upon potestative conditions, and not mutual obligations; (4) that the pretended lease was without a fixed or definite term; and (5) that, if the contract was ever valid, it was violated and breached by the defendant's failure to drill a well or do anything in pursuance of the agreement.

The answer of the defendant is that the annual rental of 10 cents an acre was adequate consideration for the lease, and that it was only after the defendant had expended a large sum of money in the development of the adjacent territory that the plaintiff deemed it advantageous to herself to seek to put an end to her contract.

There is no dispute as to the important facts of this case. The plaintiff's land was of so little value at the time she signed the contract in question that 10 cents per acre might have been regarded as a fair annual rental. It was the discovery of gas and oil in the vicinity of the plaintiff's land in April or May, 1913, that gave value to the lease in contest.

### Opinion.

[1, 2] Article 2464 of the Civil Code provides that the price of a sale must not be out of proportion with the value of the thing sold, and as an illustration declares that a pretended sale of a plantation for $1 should be considered, not a sale, but a donation disguised. It is not necessary, however, to de- ᐧ

termine whether that article of the Code is applicable to the present case. It may be assumed that the grantee could have acquired a mineral lease for 25 years by drilling a well on the plaintiff's land within the year stipulated in the contract. It is not disputed that the grantee's rights, if he had any, under the contract, were forfeited by his failure to commence drilling a well on the plaintiff's land within the year, unless it be held that the defendant could prevent the forfeiture and keep the option in force indefinitely by paying the stipulated annual rental of 10 cents an acre. Hence the only question presented for decision is whether the stipulation that the grantee might prevent a forfeiture and continue the lease or option from year to year by paying an annual rental of 10 cents an acre was or is enforceable. Our opinion is that that stipulation in the contract is null for want of a fixed or definite term. Whether it be regarded as a lease or an option, it would be an anomalous contract without a definite term or limitation. To recognize that the defendant has the right, without any obligation, to hold the plaintiff's land under a perpetual lease or option, would take the property out of commerce, and would be violative of the doctrine of ownership, defined in the second title of the second book of the Civil Code.

In the case of Saunders v. Busch-Everett Co., 71 South. 153, 138 La. 1049, where we held that the stipulation allowing the grantee to keep the option in force by paying an annual rental of 15 cents an acre was valid, the right was limited to 5 years. The opinion contains an analysis of our jurisprudence on mineral leases, distinguishing the contract then under consideration from the nudum pactum found in other cases, and particularly in Murray v. Barnhart, 117 La. 1025, 42 South. 489.

We rest our decision in this case, not upon the potestative condition on which the contract was made, but upon the proposition that a contract purporting to give a perpetual option to hold land under a mineral lease is null.

The judgment appealed from is affirmed.