THOMPSON, J.
 

 The plaintiff and the defendant each claim an oil and gas lease on the same lands described in the plaintiff’s petition and situated in the parish of Terrebonne, and the purpose of this suit is to have the plaintiff’s lease vindicated and recognized and to restrain the defendant from interfering in any manner with the exercise by the plaintiff of its rights and privileges under its lease.
 

 The lands covered by the two leases formed a part of a large body of lands eomprising approximately 600,000 acres situated in the parishes of Lafourche and Terrebonne.
 

 On July 2.3,1006, the South Louisiana Land Company and the Terrebonne Land Company, the then owners of the said lands, joined in a lease of the entire acreage to one I. N. Knapp for the purpose of exploiting the lands for oil and gas. The contract provided that at any time after three years from the date of the lease, the lessee should have the right, on giving notice to the lessors, to surrender and cancel the lease upon all the lands except 20,000 acres to be selected and reserved by the lessee. On November 30, 1913, the lessee gave the required notice, selected approximately 20,000 acres, and caused the lease on the balance to be canceled.
 

 Before this selection was made, on March 1, 1913, the South Louisiana Land Company sold a portion of the lands covered by the Knapp lease, situated in Terrebonne parish, to the Dominion Land Company, and that company, on April 2,. 1917, entered into an oil and gas lease with the defendant McCormick.
 

 On June 27, 1917, Knapp assigned to the Atlas (Oil Company, the present plaintiff, all his rights under the original lease on the 20,000 acres which he had selected and reserved.
 

 The trial below resulted in a judgment rejecting the plaintiff’s demand and annulling the lease of plaintiff on the whole of the 20,-000 acres, and from that judgment this appeal is prosecuted.
 

 The sole question presented for determination is the validity or invalidity of the original lease to Knapp, plaintiff’s assignor, for it is admitted that if that lease is invalid and no lo'nger in force the plaintiff’s suit must fail.
 

 ■ The contract provides that the lessee should hold the lands for the purposes stated for the full term of ten years, and for as much longer and for such time thereafter as in the opinion and judgment of the lessee either oil or gas can be produced in paying quantities.
 

 It was further provided that the lessee should deliver to the lessor in tanks at the1 wells one-tenth of all oil produced for a period of five years from the date bf the lease and one-eighth of the oil after said five years.
 

 After the expiration of ten months from the date of the lease, the lessee was to pay the lessor $1,000 for each and every month as an advance royalty on oil, the said payments to be made in advance on the 1st day of each month.
 

 It was further provided that the lessee should commence drilling operations within six months from the date of the lease, otherwise the lease should become null and void' and all sums paid should be forfeited to the lessors.
 

 It was provided that in the event the lessee should elect to reserve the 20,000 acres and cancel the balance of the lease after three years, all sums of money paid as advance
 
 *281
 
 oil royalties should be forfeited to the lessors, but no royalties were thereafter to be paid in advance, nor were the amounts of royalties to be guaranteed by the lessee. The only royalty to be paid on the 20,000 acfes was the one-eighth of the oil produced.
 

 ■It was further stipulated that the lessee should have the, right to determine the number of wells for oil or gas to be drilled upon said lands and the time, place, and manner of drilling the same.
 

 Some time after the date of the lease, the lessee paid the lessors the sum of $10,000 as advance royalty for the first ten months, and it was agreed that the royalties accruing thereafter under the lease should be first applied towards refunding to the lessee the said advance payment.
 

 It is in evidence that the lessee continued the advance monthly payments of $1,000 until the reservation of the 20,000 acres was made in November, 1913. All the payments made, however, under the express terms of the contract, were forfeited to the lessors when the lease was surrendered and canceled with the reservation as stated.
 

 The evidence establishes that while the lessee expended large sums of money in exploiting said land for oil and gas prior to the reservation of the 20,000 acres, the operations proved unsuccessful and no oil or gas in paying quantities was produced.
 

 After discontinuing the advance monthly, payments and selecting the 20,000 acres, the lessee Knapp adandoned all operations and sold out his entire outfit, consisting of boats, machinery, and drilling paraphernalia, and no further attempt was made by him to produce oil or gas on the 20,000 acres.
 

 There can be no room for doubt that the advance payments of royalty and the attempt at drilling maintained the life of the lease on the entire acreage covered by the lease up to November. 1913, when all payments of royalties ceased as well as the drilling operations. And these payments may perhaps be regarded as having preserved the lease on the 20,000 acres up to July 23, 1916, at which time the lease expired by its own limitation, unless it be that a mineral lease can be legally made without a time limit and in perpetuity.
 

 But it is quite clear that to maintain the lease on the 20,000 acres after July 23, 1916, there was no consideration passing from the lessee to the lessors, for under the express terms of the lease all advance payments of royalty were forfeited to the lessors as the consideration for the option and privileges of the lease up to that time.
 

 It is equally clear that the lessee was under no obligation to drill on the 20,000. acres and did not bind himself to pay any price ‘whatever as a consideration for maintaining the lease after the ten-year term had expired. He was to pay royalty only, and when, he should see fit to drill and was successful in producing oil or gas.
 

 Pretermitting the question as to whether Knapp abandoned the lease before assigning it to the Atlas Oil Company, we are firmly of the opinion that the lease had expired by limitation when said assignment was made, and was without any force and effect as against the defendant McCormick for at least two reasons: First, because there was no consideration for, and no obligation on the part of the lessee to continue the prosecution of drilling operations on the 20,000 acres, it having been left entirely to him as
 
 to
 
 when, how, and where, and in what manner drilling should be had; and, second, because the lease was indefinite as to time and gave the lessee the absolute right and privilege of holding the lease perpetually.
 

 There is no ground for dispute as to this phase of the lease.
 

 The lessee Knapp frankly admits that he construed the lease as giving him the right to go on the land and drill for oil and gas
 
 *283
 
 for an indefinite period and as long as he lived, and this without any obligation whatever on his part to do so.
 

 In the case of Bristo v. Christine Oil & Gas Co., 139 La. 312, 71 So. 521,' it was held, that a stipulation in a mineral lease that the lessee or grantee shall have the right, without any obligation, to prevent a forfeiture of the contract and hold the grantor’s land under a perpetual lease or option by paying a stipulated rental annually, is a nudum pactum.
 

 If, as in the cited case, an oil lease is null and void, where the lessee has the privilege of paying an annual rental without any obligation to develop the land, then a fortiori is such a lease null and void where the lessee is not obligated to make any payment or to drill for oil and gas.
 

 In the Bristo Case, supra, it was also said:
 

 “Whether it be regarded as a lease or an option, it would be an anomalous contract without a definite term or limitation. To recognize that the defendant has the right, without any obligation, to hold the plaintiff’s land under a perpetual lease or option, would take the property out of commerce, and would be violative of the doctrine of ownership, defined in the second title of the second book of the Civil Code.”
 

 In the sale of the land by the South Louisiana Land Company to the Dominion Land Company, the vendee was subrogated to all the rights and actions in warranty which the vendor had, and this carried with it the right to assert the nullity of the oil lease which had been granted to Knapp.
 

 The same right of action was vested in the defendant under and by virtue of his oil lease from the Dominion Land Company. Gray v. Spring, 129 La. 345, 56 So. 305, Ann. Cas. 1913B, 372.
 

 We find no error in the judgment appealed from, except that it went beyond the rights of the defendant and annulled the entire lease under which the plaintiff holds. The judgment should be amended in this respect.
 

 It is therefore ordered and decreed that the judgment appealed from be amended so as to read as follows: That the lease made by I. N. Knapp to the Atlas Oil Company on June 27, 1917, be and the same is decreed to be null and void in so far as it affects the lands leased by the Dominion Land Company to the defendant McCormick. In all other respects the judgment is affirmed, the defendant to pay the costs of this appeal and the plaintiff all other costs.