**GIBSON et al. v. YOUNG.**

No. 5163.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 6, 1935.

John B. Files, of Shreveport, for appellant.

Mabry & Carstarphen, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiffs, the widow and three heirs of Thornton H. Gibson, deceased, bring this action against I. L. Young to have their ownership recognized and their possession quieted to the following described land in Caddo parish: 6½ acres of land lying in the west half of the southwest quarter of section 10, township 23, range 16, Caddo parish, La., described as follows: Commence at the northeast corner of W. ½ of S. W. ¼ of said section 10, township 23, range 16, run thence south 7 acres in length; thence west 1 acre in width; thence north 7 acres in length; thence east 1 acre in width, to point of beginning; less right of way of one-half acre previously sold to Kansas City, Shreveport & Gulf Railroad Company; and to have canceled and erased as invalid, for reasons hereinafter set out, a purported tax sale of said land to said Young in the name of M. A. Johnson, for unpaid taxes of 1925. The description of the land in the tax deed is indefinite and reads as follows: "6½ acres in W½ of SW¼ of Sec. 10 (23–16) per Jeters Country Plat 2316, Tract 5."

Petitioners aver that in March, 1901, Thornton H. Gibson purchased from M. A. Johnson and Lee Johnson the above-described 6½-acre tract, and, in addition, the following lands adjacent thereto: N. W. ¼ of S. E. ¼, and N. E. ¼ of S. W. ¼, of section 10, township 23, range 16, and 5 acres in a square in the extreme northwest corner of S. E. ¼ of S. W. ¼ of said section 10, township 23, range 16, Caddo parish, La.; but, by error and inadvertence, the 6½-acre tract was omitted from the description in the deed to him; that said Gibson went into the physical possession of all the land he intended to purchase, and held such possession thereof as owner until his death on July 27, 1933, and that his widow and heirs, to the present time, have continued, uninterruptedly, to exercise like possession of said lands, including the 6½-acre tract.

They allege themselves to be owners of this omitted tract because of physical possession thereof by themselves and the deceased, as owners, for a period of 30 years, and invoke appropriate prescription in support thereof.

The tax deed to Young is attacked as being null and void for the following reasons: (1) That no notice of the tax sale was served on T. H. Gibson, owner, or upon M. A. Johnson, to whom it was assessed, he being dead at the time; and (2) that the description in said tax deed is indefinite and that the land cannot be identified therefrom.

They aver tender to Young of the amount paid by him for said tax deed, plus 20 per cent. penalty, which he refused.

Defendant denies that plaintiffs own said land, and avers the validity of the tax deed to him; that said land was regularly assessed for 1925 to M. A. Johnson, record owner, and sold, after due proceedings and giving of all required notices, for delinquent taxes of that year; that this tract was the only land owned by Johnson at the time. He avers he has been in possession of the land since tax sale to him, and pleads prescription of one, three, and five years.

Plaintiffs prevailed in the lower court, and, from judgment recognizing their ownership of the land and canceling defendant's tax deed thereto, defendant has appealed.

Here, appellees move to dismiss the appeal on the ground that defendant has no further interest in the land involved, because, since the appeal was perfected, he had quitclaimed all his right, title, and interest therein to one Jewell Johnson Fitts.

### Motion to Dismiss Appeal.

There is attached to the motion to dismiss a certified copy of the transfer from appellant to Jewell Johnson Fitts, wherein he declared that he conveyed and quitclaimed unto her all of his right, title, and interest in the tract of land in controversy. However, the consideration expressed therein is declared to be as follows: "The consideration for this conveyance is the fact that the said Jewell Johnson Fitts is the owner of the above described property by virtue of having heired same from her deceased uncle, M. A. Johnson, and a $1,000.00 oil payment to be paid by Z. Lohman out of $\frac{1}{16}$ of $\frac{7}{8}$ of the first oil produced and sold from the above described property as a reimbursement of the money paid by me for taxes on the above described land."

It is argued by appellant that, as this court has no original jurisdiction, it is without authority to consider the motion to dismiss the documents attached, beyond remanding it to the lower court for disposition. If the question were a controversial one, this position would be well taken. The transfer, being in authentic form, is self-proving. We have the right to consider it to the extent, at least, of determining whether, taking it at its full face value, it discloses that appellant has divested himself so completely of interest in the property that he no longer has a right to prosecute the appeal and stand in judgment.

In Saunders v. Busch-Everett Co., 138 La. 1049, 71 So. 153, on a motion to dismiss the appeal, based upon allegations that appellant had acquiesced in the judgment appealed from, the court considered and quoted from the document presumably attached to the motion, which was relied upon to prove acquiescence. The motion was denied without remanding the case for trial of the issue tendered thereby. We think it is generally conceded that the appellate courts are vested with adequate original jurisdiction, under section 27 of article 7 of the Constitution, to consider the merits of a motion to dismiss an appeal, based upon supporting attached documents, to the extent necessary to determine whether the motion should be denied or granted or whether the case should be remanded for taking of testimony on the motion; and, when the contents of the supporting documents disclose lack of merit in the motion, the court should deny the motion and not remand the case.

If the ex parte showing raises doubt of the right in appellant to prosecute appeal, the proper course is to remand the case for trial of that question; but, if the showing does not raise such doubt, or if no controversial issue is disclosed from the motion and exhibits relied upon, then the appellate court has authority to pass on the merits of the motion as presented, and deny same. No good reason appears for remanding the case for the sole purpose of having admitted in evidence on the issue of lack of right to prosecute the appeal, the authentic instrument exclusively relied on by mover.

The stipulation in the transfer from appellant, quoted above, clearly discloses that he has some interest, remote though it may be, in the outcome of this suit involving title to the land sued for. If plaintiffs succeed here, as they did in the lower court, defendant passes from the picture completely; but, if the tax sale to him is held to be valid and to have vested in him a title to the property superior to the title asserted by plaintiffs, and should oil be produced from the land, he stands to receive a substantial amount in money therefrom. We think the stipulation in his favor, forming part of the

consideration of the transfer by him, left vested in him an interest sufficient to entitle him to prosecute appeal.

In Dwight v. Brashear et al., 12 La. Ann. 860, it was held that an appellant may abandon his appeal from that portion of the judgment which passed upon the title to property, and retain the appeal, in so far as the judgment condemned him to make restitution of rents, etc.

## Merits.

The 6½-acre tract involved herein is a rectangular strip measuring 208.71 feet, east and west, and 1,460.97 feet, north and south, and adjoins on its east side the lands correctly described in the deed from M. A. and Lee Johnson to T. H. Gibson, dated March 19, 1901. At that date the right of way of the K. C. S. Railway traversed diagonally the northern end of the tract, leaving a triangular shaped parcel thereof on its east side, not exceeding an acre. Several years thereafter Gibson granted a right of way for a highway across the tract parallel to and adjoining the railway on its west side.

We are convinced from the record that M. A. Johnson intended to sell to Gibson the 6½-acre tract in 1901, as contended by plaintiffs, and that its omission from the deed was purely inadvertent. Reason and circumstances point to this as being a correct inference; none points otherwise. M. A. Johnson acquired the 6½-acre tract in one deed, while the other lands were acquired by him and Lee Johnson in another deed. Evidently the person drafting the deed to Gibson had before him only the deed to the larger tract.

It is shown that Gibson closed a trade with the Johnsons for all of the lands, with crops thereon, in August, 1900, but execution of deed was delayed until the following March. Gibson was then in possession as tenant. All of the lands were under one inclosure, except the small triangular piece in the northeast corner of the 6½-acre tract east of railway. This small tract is now, and has been for many years, open land. It lay between the Gibson residence and the railroad and highway, and was used as a lawn and outlet to these roads. It had never been cultivated, but was, during all the years, openly and freely used by the Gibsons and their tenants as a part and parcel of the land on which the residence stood. Possession thereof was open, complete, and uninterrupted.

A review of all the evidence bearing upon the question of possession of that part of the tract west of the railroad, excluding the part given for highway purposes, is unnecessary. We have read it closely, and have no hesitancy in saying it decidedly preponderates in favor of plaintiffs' contention that they and the deceased, Gibson, possessed same continuously and uninterruptedly, as owners, for more than 30 years. Johnson lived near the land until his death in November, 1925, and, so far as the record discloses, never challenged the right of the Gibsons to use, cultivate, and possess the land as was done by them. This possession was open and notorious. Had Johnson thought the land belonged to him, he would doubtless have pursued a different attitude toward it. His attitude clearly supports the contention that he intended to sell to Gibson all the land owned by him in that body; and this, being true, supports plaintiffs' contention that they and the elder Gibson possessed as owners.

Defendant's own testimony supports plaintiffs' contention. He says:

"Q. Has the Gibsons ever farmed, to your knowledge, any part of the land there west of the railroad? A. Someone has cultivated it practically every year, more one year than another.

"Q. You know who it was? A. Sam Zylks lived there awhile.

"Q. Mrs. Gibson never lived on it or farmed it to your knowledge? A. No, sir, not on the west—never any house on it.

"Q. Do you remember when the fence they testified to about was put up? A. No, sir, I could not say.

"Q. About how long would you say? A. I do not know.

"Q. Can you approximate the date—five, ten or twelve years, or what? A. The one next to the railroad has been there fifteen years, I am sure. * * *

"Q. Now, with reference to the property west of the railroad, do you say that Allie Zylks is cultivating that property? A. I do not know that I have ever seen anyone working in it. I would pass along and see that it was being cultivated.

"Q. Been cultivated practically every year since you have known it? A. Yes, sir, I am sure that Allie Zylks cultivates

it, but I have not seen him cultivating it.

"Q. I will ask you if you did not know it as the Gibson property? A. Well, up to a short time before I bought, I think it was called the Gibson property."

The two Zylks referred to by defendant were brothers of Mrs. Gibson and tenants of the Gibsons. It will also be noted that defendant, until a short time before he bought the land at tax sale, understood it belonged to the Gibsons. He says he thought it was called the "Gibson property."

To acquire title to lands through possession of 30 years, neither title or good faith on the part of the possessor is necessary. Article 3499 of the Civil Code. In the case at bar, good faith on the part of the possessors is amply shown.

To enable one to acquire title to real estate by 30 years' possession, it is necessary that such possession be continuous and uninterrupted during the period, and, in addition, it must be public, unequivocal, and as owner. Civil Code, art. 3500. Plaintiffs' case meets all of these requirements.

▮ It is unnecessary to the perfection of a title, based upon 30 years' possession as owner, that the corporeal possession once begun shall continue unbroken every day of the period. If there has been no interruption (such as to stop the current of prescription), the possession, once begun, may "be preserved by external and public signs, announcing the possessor's intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts." Civ. Code, art. 3501.

▮ The record does not disclose that the land in question was assessed to M. A. Johnson subsequent to his deed to Gibson in 1901, except for the year 1925, under which it was sold to defendant. If it had been so assessed, it is safe to assume that proof thereof would have been submitted. It would have been unnatural for him to pay taxes thereon and allow Gibson to use it. It is probable the tax assessor checked the records, found the land standing in Johnson's name, and made the assessment to him in 1925. Tax notice was sent by registered mail to Johnson at proper post office address. He was then dead. It was not returned to the tax collector. Jewell Johnson testified that the notice was delivered to her. She is a niece of M. A. Johnson, but not his only heir. He left no descendants. She claims Johnson instituted her as his sole heir in his last will and testament. The will, if it ever existed, was not probated, nor was it produced on trial. Without being probated, it was without effect. Therefore notices of the assessment of the property, delinquency of tax thereunder, and of advertisement of sale therefor, were not served on all the heirs of the tax debtor. This being true, the tax sale ab initio was null and void, and remains so unless cured by the 3-year prescription provided in section 11 of article 10 of the Constitution of 1921. Fennimore et al. v. Boatner, 112 La. 1080, 36 So. 860.

▮ No proceedings were instituted to annul the tax deed prior to filing present suit in June, 1934, and over 3 years have elapsed since registry of that deed.

It has been repeatedly held that, so long as the owner or tax debtor of property sold for taxes remains in possession thereof, the current of the constitutional prescription is suspended. Bozeman v. Crichton Co., 16 La. App. 483, 134 So. 293, and cases there cited.

Therefore, if M. A. Johnson's heirs had been in the physical possession of the land when it was sold for taxes, and since, certainly they could, even to the present time, successfully attack the sale because of lack of notices mentioned above. And, since we have found that Johnson intended to sell the land to Gibson in 1901 and that Gibson and his widow and heirs were in possession thereof as owners at the time of, and since, the tax sale, and their title thereto is no longer inchoate, but perfect, we are of the opinion plaintiffs are in position to attack the tax sale on any ground and avail themselves of the same means to have it declared a nullity as would be theirs had they been the owners thereof under title of record.

The facts of the Bozeman Case, supra, are very much similar to those of the case at bar. The land involved in that case at date of tax sale belonged to the heirs of Hattie Lester Mitchell, deceased wife of Balem Mitchell, and the Crichton Company. There was no evidence of the heirs' title of record. The land sold for taxes of 1922, in the name of Balem Mitchell, to T. A. Glass. Mitchell, after his wife's death, but before the tax sale, sold the entire property to Crichton Company, which went into and held possession when the tax sale occurred. No notice was given to this company of delin-

quency of tax nor of the sale of the land. It was held that the tax sale was a nullity for failure to give notices to the record owner and that the Mitchell heirs could avail themselves of the nullity. And so we hold in the present case that plaintiffs may do likewise. It is unnecessary to pass on other phases of the attack on the tax sale to defendant.

Judgment affirmed, with costs.