PROVO STY, J.
The defendant Mitchell was proceeding to cut and remore the timber from his own land, and also doing so through his codefendant, when the plaintiff brought this suit, enjoining him and his co-defendants, and sequestering so much of the cut timber as was yet within the reach nf the sheriff, and claiming large damages for the timber theretofore removed and disposed of.
Plaintiff relies upon three certain so-called “timber contracts”; two executed by the defendant Mitchell, and one by J. W. Loper, from whose widow and heirs the defendant Mitchell acquired a part of the land in question. By assignment the contracts have passed to the plaintiff company.
These so-called “contracts” are not signed by the vendees or purchasers. They are impugned by the defendant Mitchell on sundry grounds, one of which alone need be •considered. It is that they were not timely .accepted by the vendees.
The same printed form was used for making them, and they, in consequence, are .alike in verbiage. They purport to be sales ■of the standing timber at SO cents per thousand feet, payable as cut and removed, the purchaser binding himself to cut and remove within 10 years, with right to prolong .10 years more by paying 10 cents per year per acre after the first 10 years, and obligating himself to give in the timber for assessment and to pay the taxes thereon from date of contract. The contract is to be null in case a railroad is not completed to Far-mersville within 2% years. All rights and privileges of the purchaser under the contract are to vest in and inure to his assigns.
In the J. W. Loper contract the vendee is one McShane; in one of the contracts of the defendant Mitchell the vendee is one Jackson; and in the other, the vendees are Lockwood and Regan. McShane assigned to Jackson, Lockwood, and Regan whatever interest he had under the Loper contract. After this assignment, and about a year after the date of the contract, and about three months after the date of the Mitchell contracts, Jackson and Lockwood and Regan executed and recorded a notarial act un-qualifiedly accepting the contracts and binding themselves to all the obligations therein stipulated. No notice of this acceptance, except such as may have resulted from the registry, was ever communicated to the ven-1 dor. The circumstances under which the contracts were executed were these: Me-. Shane, Lockwood, Regan, and several others-were jointly interested in a speculative scheme, the main feature of which was the construction of a railroad through the country where the timber in question is situated. This country was without a railroad, and the timber was of little value for want of an outlet to market. The associates did not propose to construct the railroad themselves, but to induce others to do it, and to that end it was important for them to make sure of an amount of tonnage sufficient to justify the construction of the road. This they sought to do by entering with the landowners into contracts like those involved in this suit. Accordingly, they sent solicitors throughout the district to secure these con *903 tracts. These solicitors drew up the contracts, and got the landowners to sign them, and themselves signed them as witnesses, and caused them to he recorded. The profit of the associates was to he realized from the increase in the value of the timber to result from the advent of the railroad. - The landowners had for entering into the contracts the double inducement of selling their timber and securing railroad facilities.
The contracts read as if intended to be signed by the vendee at the same time as by the vendor. Nothing on their face indicates that there was any intention to allow the vendee any delay for consideration.
The circumstance that the acceptance was not by the same instrument is insignificant, since article 1804, Rev. Civ. Code, expressly provides that the acceptance need not be by the same act.
Article 1810, Rev. Civ. Code, reads:
“If the party making the offer, die before it is accepted, or he to whom it is made, die before he has given his assent, the representatives of neither party are bound, nor can they bind the survivor.”
3. W. Loper died long before the said acceptance; hence, in the case of the contract made by him, the said acceptance manifestly came too late.
Article 1801, Rev. Civ. Code, reads:
“The party proposing shall be presumed to continue in the intention, which his proposal expressed, if, on receiving the unqualified assent of him to whom the proposition is made, he do not signify the change of his intention.”
As already stated, the first actual notice Mitchell had of the said acceptance was, so far as the record shows, the institution of this suit, or the protests of plaintiff immediately preceding this suit. When thus notified, his change of intention had already been signified to plaintiff by the fact itself of his having made another disposition of the timber.
■ Article 1802, Rev. Civ. Code, reads:
“He is bound by his proposition, and the signification of his dissent will be of no avail, if the proposition be made in terms, which evince a design .to give the other party the right of concluding the contract by his assent; and if that assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow.”
There can be no question that the written instruments here in question are so expressed as to—
“evince a design to give to the other party the-right of concluding the contract by his assent” — ;
and, in view of the fact that the instruments were executed out of the presence of the vendees,, or of any person having authority', to accept for them, the inference is irresistible that these instruments were intended to> be propositions of contract to be submitted to the vendées for their acceptance. But no time -is fixed for such acceptance, and the question arises, what length of time' does the situation of the parties and the nature of the contract prove that it was the intention of the proposer to allow?.
Under the circumstances, we think no-more time was intended to be allowed to the vendees than what might be required to submit the contract to them for acceptance or rejection.
As a matter of fact, the vendees waited' for giving their acceptance until the construction of the railroad had become an assured thing, more than a year after the-date of the Loper contract, and more than three months after the date of the two other contracts. In other words, theirs was a pure speculation: If the railroad came to-make the timber valuable, they accepted; if not, not. We do not think the intention was to allow them this opportunity for speculation. The judgment held the contracts-to be null, and. dismissed plaintiff’s suit.
Judgment affirmed.