(57 South. 281.)

No. 18,836.

### GOODSON v. VIVIAN OIL CO.

(Jan. 2, 1912. Rehearing Denied Jan. 29, 1912.)

*(Syllabus by the Court.)*

Mines and Minerals (§ 58*) — Mineral Lease — Validity — "Contract" — "Commutative Contract."

A so-called mineral lease for 10 years, based on a royalty, in which the lessee does not obligate himself to develop the premises for oil and gas, and in which the lessee reserves the right at any time to terminate the lease after finding oil or gas in paying quantities, is void, as to the lessor, for want of consideration.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 58.*

For other definitions, see Words and Phrases, vol. 2, pp. 1345, 1513–1534; vol. 8, pp. 7615–7616.]

Appeal from First Judicial District Court, Parish of Caddo; Thomas F. Bell, Judge.

Action by W. M. Goodson against the Vivian Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thigpen & Herold, for appellant. John B. Files, for appellee.

LAND, J. Plaintiff sued to cancel an alleged mineral lease on the ground of want of mutuality in the covenants, and on the further ground of abandonment. There was judgment for the plaintiff, and the defendant has appealed.

The instrument, of date December 11, 1909, granted to the defendant the exclusive right to drill and explore for oil, gas, and other minerals on a certain tract of land containing 35 acres more or less, with the right of using sufficient water, gas, and oil therefrom for conducting the operation of drilling, with the further right of laying pipe lines for the conveyance of oil, gas, and water across the premises, and with such further rights and privileges as were reasonably requisite for the conduct of such operation. It was further stipulated as follows:

"This grant and option is executed for the consideration, on the conditions and for the terms as follows, to wit:

"First. There is hereby granted to said company the exclusive right to begin the drilling of an oil or gas well on said premises within six months from date hereof. All pipe lines shall be buried below plow depth when requested by first party. It being understood that if actual operations for the beginning of an oil or gas well shall not have been begun on or before the expiration of six months from this date, this grant shall be considered as having expired and shall be wholly at an end.

"This grant, so accepted by the company

shall be a mineral lease covering said above described lands, under which said company shall have the exclusive right to drill, mine, bore or explore the said lands for oil, gas and other minerals for a period of ten years and as much longer thereafter as oil, gas or other minerals shall be produced in paying quantities; and from such product as may be developed and produced from said lands, the said W. M. Goodson and wife shall receive royalties as hereinafter provided."

"Third. If oil or gas be found in paying quantities, then the said Vivian Oil Company shall deliver as a royalty to the said W. M. Goodson and wife, a one-eighth part of all the oil saved from that produced, such delivery to be made in tanks with connections by W. M. Goodson and wife provided or into any pipe line that may be connected with the well or wells, and if any well on said premises produce gas in paying quantities, then the said W. M. Goodson and wife shall be paid at the rate of $100.00 per year for each and every well from which gas may be sold or used off the premises, such payments to be made at Vivian State Bank, Vivian, Louisiana.

"Fourth. * * *

"Fifth. * * * If the said company shall avail itself of the right herein granted to drill on said lands and thereby convert this option into a complete contract of lease and shall find oil or gas in paying quantities. it then shall have the right at any time to terminate said lease and to remove its machinery and property therefrom.

"Sixth. In consideration of the right granted by the said W. M. Goodson and wife to the Vivian Oil Company to drill and explore on said land within six months from the date hereof, and in consideration of the said W. M. Goodson and wife granting to the said Vivian Oil Company, the Vivian Oil Company pays with the signing of this grant unto the said W. M. Goodson and wife the sum of $150.00 the receipt of which said amount and the sufficiency of which as a consideration for the rights herein granted is hereby acknowledged."

Defendant drilled a well in the premises in March, 1910. This well, when it came in, spouted mud, water, and gas. On the same day the pipe was plugged, and the defendant moved its drilling machinery to another tract, to save some other lease by commencing the work of drilling thereon. The plug inserted in the well on plaintiff's land blew out, and the final result was a well, which produced nothing but water. .

On June 5, 1910, Goodson wrote to the defendant as follows:

"I thought that I would notify you that your lease will end on the 11th of this month, and you have made no well yet, for the boys who drilled there say that it is no well and when I leased this land to J. C. Childs it was not for gas and they tried to make a gas well out of it and failed and I would like to hear from you at once."

The defendant, on June 7, 1910, wrote in reply that, in accordance with the terms of the lease, $100 had been deposited to the credit of Goodson in the Vivian State Bank, covering gas royalty on Goodson No. 1, brought in as a gasser on March 10, 1910. Goodson refused to accept this payment, and, in September, 1910, objected to defendant's resuming drilling operations on the premises, and a few days later instituted the present suit.

The agreement in question is styled in the instrument a "grant and an option"; that is to say, a *grant* on the part of the plaintiff, and an *option* on the part of the defendant. The option was exercised within six months by beginning to drill a well, and the grant became a so-called mineral lease. The defendant nowhere in the instrument obligates itself to exploit the land for oil and gas, and, in the event it should do so, reserves the right, at any time, to terminate the lease, and to remove its machinery and property from the premises.

"A contract is an agreement by which one person obligates himself to another to give. to do or permit, or not to. do something, expressed or implied, by such agreement." C. C. art. 1761.

"Commutative contracts are those in which what is done, given or promised by one party is considered as an equivalent to, or a consideration for, what is done, given or promised by the other." C. C. art. 1768.

As the defendant did not obligate itself to do anything, it is evident that the plaintiff received no consideration for the so-called mineral lease. In Murray v. Barnhart, 117 La. 1023, 42 South. 489, where the lessee obligated himself to complete a well on the premises within one year from the date of the agreement, but reserved to himself the

right to retire from the contract at any time on the payment of two dollars, it was held that the obligation of the lessee was purely potestative. In the same case, the court said that the development of the land for oil and gas was the exclusive purpose and object of the contract.

In the case at bar, there is *no obligation* on the part of the lessee to exploit the land for oil and gas, and there is *no consideration* for the reserved right to terminate the lease at any time, in the event of the finding of oil and gas in paying quantities.

The plaintiff had the legal right to treat the agreement as a nudum pactum, and to refuse the *gratuity* tendered by the defendant. The shallow well was of no benefit to the plaintiff.

The Louisiana cases cited by the learned counsel for the defendant do not cover a case of this kind, where there is *no obligation* to exploit the land, and *no consideration* for the right to terminate the contract at any time. The civil law requires a *serious* consideration, while the common law is content with a *nominal* consideration. The difference in this respect between the two systems is so wide that common-law cases have no application. See Murray v. Barnhart, supra. The contention that the agreement was intended as a *continuing* option for 10 years is repelled by the language of the instrument, which clearly differentiates the option from the lease.

Judgment affirmed.