Statement of the Case.
MONROE, J.
Plaintiffs allege that they and the defendant, Kehoe, signed a certain instrument, in writing, which they pray be decreed of no effect. Kehoe filed an exception of nonjoinder of parties defendant, alleging that, to the knowledge of plaintiffs, he had transferred his interest to Roussel, and, plaintiffs having made Roussel a party defendant, be filed an exception of “inconsistency” and “no cause of action.” There was judgment maintaining the exception of “no cause of action filed by the defendants,” and dismissing the suit, and plaintiffs have appealed. The instrument referred to reads as follows:
“This agreement, made and entered into this seventeenth day of February, A. D. 1911, by and between Mrs. Marie Felicie Waggaman of New Orleans, La., and William Berl, of Wilmington, Del., the lessors, and Miles J. Kehoe, of New Orleans, La., the lessee, witnesseth: That lessors, in consideration of one dollar in hand paid by the lessee, the receipt whereof is hereby acknowledged, does hereby grant, lease and let unto the said lessee, his heirs, successors and assigns, all of the petroleum, maltha, gas or other minerals in, upon, or under the lands hereinafter described, and also the said lands, for the purpose and with the exclusive right to drill and otherwise operate therein, and to produce and save said petroleum, maltha, gas or other minerals, together with all necessary rights of entry into, and the rights of way for roads, pipe lines and telephone lines, upon and over said lands, and the right to use, without charge, sufficient water, wood, oil, gas or other materials from said lands for carrying on drilling and pumping operations thereon and the right to remove from said lands, at any time, any and all property placed, or caused to be placed, thereon by said lessee, the tract of land hereby leased being situated in the parish of Calcasieu, state of Louisiana, and described as follows, to wit: [And here follows description of 785.11 acres of land.J
“It is understood and agreed that lessee enjoys the privilege of drilling as often as he desires on any part of the above-described (785.11 acres) property, and in the event petroleum, maltha, gas or any other minerals are discovered within the life of this lease, said oil well or gas well or discovery shall be the center-of' one hundred acres that the lessors agree to sell to the lessee for the sum of five thousand dollars ($5,000.00) or fifty dollars ($50.00) per-acre, at any time within six months from date of said discovery.
“But if oil or the other products mentioned above are not discovered after two years have-been allowed for the exploitation, lease is to-terminate and be canceled and void, and be returned to lessors free from any and.all incumbrances. To have and to hold the same unto the said lessee, his heirs, successors and assigns, for the full term of ten years, from and after the date hereof, if the herein-mentioned products are discovered on the lands herein leased, and as much longer' as petroleum, maltha, gas or other minerals shall be produced by-said lessee or assigns from said lands. But, if oil or other products mentioned above are not discovered, after two years have been allowed for their exploitation, lease is to be canceled and returned to lessors free from incumbrances due to granting of said lease. Yielding and paying therefor unto the said lessors one-eighth (%) royalty, less the cost of production, of so much of said petroleum, maltha, gas or other-minerals produced and saved from the said lands by the lessee (the usual deduction being made for shrinkage and evaporation) as shall be evidenced by written statement thereof to be rendered the lessors on or about the fifteenth day of each month, for the oil, maltha, gas, or-other minerals produced during the preceding calendar month: delivery of the quantity of oil or maltha to be made into the lessors’ tanks at the well.
“It is understood that, upon a well or wells-coming in, the lessors will be privileged to let their oil remain in storage with the lessee for-the term of, say, thirty days. It is further understood that the oil stored by (for) the lessee-by the lessors is subject to the usual and customary charge for storage.
“It is further understood that, in case the-lessors should undertake to market the oil and pipe it, same will be subject to customary charge for piping, or to such charge as the-lessee pays himself.
“The lessee agrees to commerce the drilling of a well within six months from the date hereof, unlqss he has transferred the lease during this period without giving his successor ample time to begin operation, when the lessors will agree to allow his successor an additional three months in which to commence drilling.
“If the said lessee, after the completion or abandonment of any well on said premises, shall cease wholly to drill thereon for a consecutive space of time greater than two years, then the-lessee’s right to drill further wells shall terminate and cease.'
*1023 “The covenants herein contained shall bebinding upon the parties hereto and upon their respective heirs, successors and assigns.
“In witness whereof the said parties hereunto ■set their hands and seals this day and year first written above.
* ‡ # * * *
“Petitioners further show that they 'are the owners of the aforesaid property, in indivisión, in the proportion of two-thirds to petitioner Mrs. (Widow) Marie Eelicie Waggaman, and one-third to petitioner William Berl by virtue of a sale, dated December 31, 1887, by Miguel J. Rostett to them by act before M. Richard, then a deputy clerk of the district court and ex officio notary for the parish ’of Calcasieu, state of Louisiana, which sale' was duly registered in the conveyance records of Calcasieu, parish, state of Louisiana.
“Petitioners further aver that the said instrument of writing, copy of which, marked ‘A,’ is a mere license or privilege granted by petitioners to defendant and his assigns to do the various things enumerated therein; that consequently the said license or privilege was revocable at the will of petitioners; that petitioners revoked, annulled, and canceled the same by letter written by them, through their counsel, to defendant, Miles J. Kehoe, March 13, 1911, copy of which letter is annexed hereto and made part hereof, as petitioners’ Exhibit B., which letter was delivered to defendant in person on its date; and that, since defendant still claims rights by virtue of the said original instrument, copy marked ‘A,’ there should be judgment herein, decreeing the same null, void, and of no legal effect.
“Petitioners further aver in the alternative that, in the event the court should hold that the aforesaid original instrument of writing, copy marked ‘A,’ is not a mere license or permit, revocable at the will of petitioners, the said instrument of writing, copy marked ‘A,’ is null, void, and of no legal effect against petitioners, because it is an exclusive option granted by petitioners to defendant to operate and drill on the said property for the space of two years, without any valuable consideration, the sole purported consideration for said option being one dollar, an insufficient- consideration, if actually paid, but not even actually paid; that, although petitioners granted this exclusive option to defendant, defendant bound himself in no way; and that said instrument of writing, being a nudum pactum and having been revoked, annulled, and canceled (Exhibit A) by petitioners, prior to defendants having commenced the drilling of a well on the aforesaid property, there should be judgment, decreeing said original instrument of writing, copy marked ‘A/ null, void, and of no legal effect against petitioners.
“Petitioners further aver, in the alternative, that, in the event the court should hold that the aforesaid original instrument of writing, copy marked ‘A,’ is not a mere license or permit, revocable at petitioners’ will, and that it is not a nudum pactum, it is null, void, and of no legal effect against petitioners, and it should be so decreed by the court, for want of legal or sufficient consideration.
“Petitioners further aver that the property in question is worth over twenty-five thousand dollars ($25,000).
“Wherefore petitioners pray that defendant,. Miles J. Kehoe, be duly cited to appear and answer hereto, and that, after due proceedings had there be judgment in favor of petitioners, William Berl and Mrs. (Widow) Marie Eelicie Waggaman, decreeing the aforesaid original instrument of writing, copy marked ‘A,’ dated February 17, 1911, null, void, and of no legal effect against petitioners.
“Petitioners further pray for all costs, and for general and equitable relief.”
Following is a copy of Exhibit B referred to, dated March 13, 1911:
“Mr. Miles J. Kehoe, City.
Dear Sir: Confirming the conversation which Messrs. Waggaman had with you on behalf of Mrs. Marie Eelicie Waggaman and Mr. William Berl, We hereby revoke, annul and cancel the permit dated February 17th, 1911, from our clients, allowing you the exclusive optional privilege to drill or otherwise operate for a period of ten years on the following property, to wit:” [Here follows a description of the land.]
By supplemental petition, it is alleged:
“That in the alternative, in the event the court should hold that the original petition on file is not a mere license or permit, revocable at the will of petitioners, nor an exclusive option, without consideration, revoked before commencing the drilling of a well on said property, nor a nudum pactum, nor a document without sufficient and legal consideration, the said instrument of writing is null, void, and of no legal effect against petitioners, and should so be decreed by this court, because, should oil be found on said premises at any time within two years from the date of said instrument of writing, irrespective of the amount discovered, the said instrument of writing is to continue in full force and effect for a time uncertain, if not perpetually.”
Opinion.
The “one dollar in hand paid by the lessee” is no “consideration,” and may be disregarded (Murray v. Barnhart, 117 La. 1023, 42 South. 489); and there is nothing else in the contract which bears any resemblance to a consideration moving from the lessee in *1025 return for the right, granted to him by the lessors, to take possession of and exploit their land, and buy it at $50 an acre, in the event of the discovery of oil, save the stipulation, “the lessee agrees to commence the drilling of a well within six months.”
It will be observed that he imposes upon himself no obligation to prosecute the work of drilling after it has begun, or to complete it within any given period. The most that the lessors would have the right to claim being that, if oil be not produced at the end of two years, the contract shall be deemed at an end; and a doubt is cast upon that right by the last paragraph, from which it would appear that the lessee would be entitled to hold possession so long as he does not allow two consecutive years to elapse, after the “completion or -abandonment” of one well, before beginning another; and it would also appear that he may abandon when it suits his convenience and pay nothing, so that all that the lessors get for tying up their land for an indefinite period is the promise of a one-eighth royalty, less the cost of production, in the event anything is produced, but with no obligation on the part of the lessee to produce anything, or to make any serious effort in that direction. To the contrary, the contract specifically assures to the lessee “the right to remove from said lands, at any time, any and all property placed, or caused to be placed, thereon by said lessee.”
The case presented falls within the rulings of this court in Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 South. 253, Murray v. Barnhart, 117 La. 1023, 42 South. 489, Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 851, 852, 44 South. 481, Goodson v. Vivian Oil Co., 129 La. 955, 57 South. 282, and of other courts in Foster v. Ellis, 90 Fed. 178, 32 C. C. A. 560, Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 980, 44 L. R. A. 107, Petroleum Co. v. Coal, etc., Co., 89 Tenn. 381, 18 S. E. 65, Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320, Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 375, National Oil & Pipe Line Co. v. Teel (Tex.) 67 S. W. 547, to the effect that contracts, such as that here presented, are without consideration; and the exception should have been overruled. It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, the exception of no cause of action overruled, and the case remanded for further proceedings according to law, defendants to pay the costs of the appeal.