O’NIELL, J.
This is a suit to annul a contract purporting to be an oil and gas lease of the plaintiff’s land.
The document representing the agreement is as follows, viz:
“Know all men by these presents: That I, Wm. M. McClendon, of 'Vivian, Louisiana, the party of the first part, in consideration of the sum of three hundred dollars paid by Busch-Everett Company, a corporation duly organized under the laws of the state of Ohio, party of the second part, the receipt of which is hereby acknowledged, and thé further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and do by these presents grant, bargain, sell, and convey, unto the parties of the second part, their heirs and assigns, all of the oil and gas in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling, mining, and operating for gas, oil, or water, and to conduct all operations, to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transportation of oil, gas, and water, with the right to use sufficient water, gas, or oil to operate said property, and shall have the right to remove all machinery, fixtures, and improvements placed thereon at any time, reserving, however, to the party of the first part the equal one-eighth part of all oil produced and saved upon said premises, to be delivered in any pipe line to which well or wells may be connected, to the credit of the party of the first part.
“If gas is found, second party agrees to pay the first party one hundred dollars for the product each year, payable on completion of well, for the product of each well, while the same is being used off the premises; and party of the first part, by furnishing his own pipe and connection, shall have sufficient gas, free of cost, for use in one dwelling house on the premises so long as the gas is utilized off the premises, at his own risk.
“No well shall be drilled within three hundred feet of any building now on said premises without the consent of the first party.
“Said land being of the following description, to wit: North half of the northeast quarter and northeast quarter of northwest quarter, section 33, township 22, range 15, in Caddo Parish, La., containing one hundred twenty acres, more or less.
“To have and to hold the above-described premises, unto the said parties of the second part, their heirs and assigns, on the following conditions: In ease operations for either the drilling of a well for oil or gas is not commenced and prosecuted with due diligence within-from this date, then this grant shall immediately become null and void, as to both parties, and it is agreed that the completion of a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease.
“In case the parties of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance, or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product and as much longer as oil or gas may be produced in paying quantities thereon.
“This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned; and it is so understood by both parties to this agreement.
“It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, and assigns.
“Witness our hands this 18th day of February, A. D. 1909.”
The plaintiff alleges that the contract was null and void from the beginning, for want *725 of mutuality, because the lessee had the right at any time to remove from the premises all machinery, fixtures, and improvements placed thereon. He contends that this clause and other unilateral provisions in the agreement made it depend upon a potestative condition, which the lessee could bring about or hinder at his pleasure. He alleges that the cash consideration of $300 stated in the contract was inadequate, and that the only real consideration was the exploring for and developing of the mineral oil and gas. He alleges that the provision that, “in case operations for the drilling of a well for either oil or gas is not commenced and prosecuted within - from this date, then this grant shall immediately become null and void as to both parties,” rendered the contract null and void for want of a fixed and definite term.
The plaintiff alleges that, if it be found that the contract was not null from the beginning, then that the lessee has violated it by failing and neglecting to explore and develop the land for oil and gas and protect its lines and render it productive to the lessor, which were the real considerations of the contract. In this connection it is alleged that only one well, a gas well, has been drilled on the tract of 120 acres of land, notwithstanding frequent demands for a proper development of the land have been made during the three years which have gone by since the contract was entered into. He avers that the defendant has no intention of exploring the land or developing its mineral possibilities, but claims the right to hold it for 25 years and prevent others from developing it.
The plaintiff prayed for the annulment of the contract of lease, reserving to the defendant the gas well drilled by it so long as the same be operated by it, together with the right of ingress and egress for that purpose, on the land described in the contract.
The defendant’s answer to the suit is that it was only obliged to drill one well, and that it has complied with that obligation.
The well was drilled by the defendant in January, 1910, is located 300 feet southeast from the northwest corner of the land, is 978.8 feet deep, cost $5,000, and produced gas. One of the contractors who drilled the well soon afterwards proposed to drill a deep well for oil on the land described in the contract, at his own expense, for one-half of whatever the well might produce; but the defendant declined the proposition. It is admitted that the oil and gas produced in the vicinity of this land came from the same or approximately the same strata, and that the drainage lessens the pressure and production of the neighboring wells. It is admitted that frequent demands were made upon the defendant to proceed with the developing of the plaintiff’s land; that the defendant refused to comply, and has no present intention of drilling more wells on the land. It is admitted that the assessment of the land was greatly increased, on account of the lease involved in this suit, that others have sought to lease this land to develop its minerals before and since the institution of this suit, and that the lease to the defendant prevented the plaintiff’s granting any other lease, and that the agent of the defendant company, in securing the contract of lease in contest, stated to the plaintiff, as an inducement to him to grant the lease, that the defendant company “was after oil first, last, and all the time.” It is admitted that the defendant voluntarily increased the annual rental for the gas well on the plaintiff’s land from $100 to $200, and has paid $600, the last payment of $200 having been made on the 28th of January, 1913, in advance for the year ending on the 23d of January, 1914. It is admitted that a certain witness would testify that he could drill and produce a successful oil well on the plaintiff’s land, and that another witness *727 named, would testify that he has nineteen wells on his 80 acres of land within a mile and a quarter from the plaintiff’s land, which wells have produced large quantities of oil and gas, but that some of them were dry holes, and only five were, when this suit was tried, producing oil in small quantities. It is also admitted, however, that since the defendant drilled the gas well on the plaintiff’s land, five deep wells have been drilled on other lands adjoining or near the plaintiff’s land, to depths of about 2,400 feet, and did not produce oil nor gas, and that the defendant voluntarily canceled its lease on 78 acres of land belonging to the plaintiff in the S. % of section 29, township 22, range 15, for which a cash bonus of $1,000 had been paid, and that the defendant’s reason for canceling the lease was that it was not believed that the land would produce oil.
Judgment was rendered in favor of the plaintiff, annulling the contract of lease and reserving to the defendant the well drilled by it on the defendants’ land, so long as the same should be operated by the defendant, together with the right of ingress and egress on the plaintiff’s land. The defendant has. appealed.
[1] The facts above recited bear upon the question whether the defendant is or is not justified in refusing to expend any more money to drill more wells on the plaintiff’s land. But the question presented by the pleadings in this suit is whether the defendant is justified in holding the land under-lease for 25 years and preventing its being further developed; for it is to be observed that the instrument representing the agreement between the parties does not contain an express obligation on the part of the defendant to drill more than the one well.
The failure to stipulate the time within which the lessee or grantee was to commence, and prosecute with due diligence, the drilling of a well for oil or gas, made the execution of the agreement depend entirely upon the will of the lessee or grantee. Therefore, unless the cash payment of $300 was an adequate consideration, the instrument signed by the parties did not represent a mutual ox-valid contract, so long as there was no obligation imposed upon the lessee or grantee. A different condition arose, however, when the lessee was permitted to drill the well, and the lessor acknowledged the execution of the contract to that extent by accepting the rent according to the terms of the agreement. It is virtually conceded by the plaintiff, in asking that the well drilled on his land be reserved to the defendant, that the contract has been executed to that extent, notwithstanding the original agreement did not stipulate a time limit within which the defendant was obliged to drill the well.
[2] The potestative condition in the instrument, that the lessee ox- grantee should have the right to remove from the leased premises, at any time, all machinery, fixtures, and improvements xxlaced thereon, does not render the agreement null now, if the lessee or grantee has performed its obligations under the agreement. In the case of Caddo Oil & Mining Co. v. Producers’ Oil Co. (on rehearing) 134 La. 711, 64 South. 684, the lessee or grantee had expressly reserved the right to abandoxx the leased premises whenever it desired to cease operations and to remove all property placed thereon by it, at its discretion. And it was held that, although what purported to be a contract was without effect so long as it remained optional with the defendant to execute or withdraw from it, a different condition arose when the defendant actually discharged the obligation which, except fox- the potestative condition, would have been imxxosed upon the defendant, and the plaintiff accepted the advantage resulting therefrom. See, also, Gayden v. Railroad Co., 39 La. Ann. 269, 1 South. 792; De la Vegne v. *729 N. O. R. R. Co., 51 La. Ann. 1742, 26 South. 455; Houssiere-Latreille Oil Co. v. Jennings-Heywood Oil Syndicate, 115 La. 128, 38 South. 932; Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 823, 44 South. 481; Busch-Everett Co. v. Vivian Oil Co., 128 La. 892, 55 South. 564; and Hudspeth v. Producers’ Oil Co., 134 La. 1019, 64 South. 891.
The plaintiff does not contend that the •defendant has violated any obligation expressly assumed by it. I-Iis contention is that “the principal consideration and moving •cause” of the contract was the development •of the mineral oil and gas, and that there has not been a fair or reasonable compliance with that implied obligation on the part of the defendant.
[3] There are numerous decisions to the effect that the lessor in a mining lease such as we have before us is not entitled to a can■cellation or forfeiture of the contract for the violation of an implied obligation on the part of the lessee, in the absence of an express provision for such forfeiture. In the case referred to above, Caddo Oil & Mining Co. v. Producers’ Oil Co., 134 La. 717, 64 South. 684, quoting Thornton on Oil and Gas, § 111, on this subject, it was said that there is an implied condition in every oil lease that, when the existence of oil in paying •quantities is made apparent, the lessee shall •drill as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee, and that whatever ordinary knowledge and care would dictate as the proper thing to be done for the interest of the lessor and lessee under any given circumstances is what the law requires to be done, as an implied condition of the lease. Hence it was said that whether such implied condition has been complied with in any given case is a question of fact for the court to decide from the •evidence in the case. To which doctrine the court added that, even when it appears that there should be a further development of the property, the rights of the lessee cannot be divested merely because of a difference of opinion on that subject between the lessor and lessee, in the absence of proof or allegation of fraud or bad faith. In the case then under consideration, however, it was found that the lessee had complied with all of the obligations, expressed in the contract, and had also fulfilled the implied obligation to develop the land to a reasonable extent. The question whether there had been a reasonable compliance with the implied obligation to develop the land was all-important in that case because the cash consideration of $1 paid by the lessee for the lease was deemed no consideration at all; and it would therefore, perhaps, have been held that there had been no consideration at all for the contract if there had not been a compliance with the implied condition that the land should be developed to a reasonable extent. These considerations also controlled the decision in Goodson v. Vivian Oil Co., 129 La. 955, 57 South. 281, and in Berl v. Kehoe, 130 La. 1020, 58 South. 864.
[4] The plaintiff in the case before us alleged that the $300 paid when the contract was signed was not an adequate price or consideration for permitting the lessee to speculate with the property. But there is no proof, nor evidence from which we would be justified in the inference, that the $300 paid in advance, together with the rental of $100 a year from the time the gas well was drilled, is an inadequate consideration for the lease in contest. The annual rental was increased to $200, and the plaintiff has' accepted and retained $600 for three years’ royalty or rent, the last payment of $200 for a year in advance having been made and accepted six months after this suit was filed.
To annul the contract as to the area of land not yet developed, and allow the plain *731 tiff to retain the $900 which he has received, and to continue receiving $200 a year as royalty for the one well, would be to construct a contract which the defendant has not given its consent to. Courts may annul contracts, but they cannot construct or reconstruct them without the consent of both parties.
[5] Whatever right the plaintiff may have in the premises, he has no right to retain as the consideration for the one well drilled by the defendant the amount paid and received as the consideration for the privilege of drilling wells on the entire tract of 120 acres, and annul the contract except as to the one well.
For the reasons assigned, the judgment appealed from is annulled, and a judgment of nonsuit is now rendered against the plaintiff at his cost.