(82 South. 690)

No. 23127.

RAINES et al. v. DUNSON et al.

(June 29, 1918. On the Merits, May 5, 1919. Rehearing Denied June 30, 1919.)

*(Syllabus by the Court.)*

1. COURTS ⊜224(11)—SUPREME COURT—APPELLATE JURISDICTION.

Where the value of the interest claimed by a third person not a party to the suit in which a judgment is rendered is shown to exceed the amount required to confer jurisdiction on this court, the appeal will not be dismissed; nor will an appeal be dismissed in such case because of a doubt as to the ability of the appellant to establish his claim as a matter of law.

2. APPEAL AND ERROR ⊜801(3)—MOTION TO DISMISS—GROUNDS—ACQUIESCENCE OF PARTIES—RIGHTS OF THIRD PERSON APPEALING.

How far the acquiescence of the parties to a judgment will affect the rights of a third person appealing therefrom is a question that may better be determined after a hearing on the merits of the appeal than on a motion to dismiss it.

*(Additional Syllabus by Editorial Staff.)*

3. APPEAL AND ERROR ⊜151(6)—APPELLATE JURISDICTION—APPEAL BY THIRD PARTY.

The right of appeal given by Code Prac. art. 571, to third persons not parties to a suit "when such third persons allege that they have been aggrieved by the judgment" is subject to the constitutional limitations upon appellate jurisdiction.

4. APPEAL AND ERROR ⊜151(6)—ACQUIESCENCE BY PARTIES—RIGHTS OF THIRD PARTY.

Where plaintiffs appealed from a judgment and acquiesced in the dismissal of their appeals, so that judgment became final as to them, their acquiescence did not bind or preclude a third party at interest against his consent or over his protest, and was not res judicata and binding upon him.

5. MINES AND MINERALS ⊜71 — SUIT FOR CANCELLATION OF LEASES—RIGHTS OF THIRD PARTY UNDER PLAINTIFFS—DETERMINATION.

Where plaintiffs sued to cancel certain mineral leases executed by them, the rights of a third party acquiring from them mineral leases upon the same property while causes were pending in district court and before any judgment therein would be determined as of the date of his lease contracts.

6. APPEAL AND ERROR ⊜151(6)—RIGHT OF APPEAL BY THIRD PARTY—CONSTRUCTION OF STATUTE.

Under Code Prac. art. 571, a third party showing his appealable interest, which may be affected by judgment, is entitled to have Supreme Court pass upon merits of case in so far as they may affect his interest; it not being necessary that it should have been previously adjudicated, but sufficient that it reasonably appear.

On the Merits.

7. MINES AND MINERALS ⊜⇒58—OIL AND GAS LEASE—FAILURE OF CONSIDERATION—UNILATERAL CONTRACT.

Where an oil and gas lease recited a cash payment by the lessee, but the lessor charged and the lessee admitted that no amount whatever was paid, the contract was unilateral, and neither the lessor nor the lessee was bound.

8. MINES AND MINERALS ⊜⇒58—PROVISIONS OF LEASE—INSERTION BY LESSEE—EVIDENCE.

In suit for cancellation of oil and gas leases, evidence *held* not to show that a provision therein that the drilling of a well either on leased property or within a radius of two miles should be in full satisfaction of drilling clause under lease was a forgery not in lease when signed by lessors, or, if therein, purposely concealed from the ignorant lessors.

9. MINES AND MINERALS ⊜⇒58—OIL AND GAS LEASE — PROVISION FOR DRILLING — VALIDITY.

Where oil and gas leases were unilateral because no consideration was paid, as recited, and were binding neither upon lessor nor lessee, a provision that drilling of a well, either on leased property or within a radius of two miles, should satisfy drilling clause in lease was a casual and potestative condition pure and simple, and void as to lessors under Civ. Code, arts. 2023, 2024, 2034, 2035.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Separate suits by D. H. Raines and Joe Herndon against C. E. Dunson and others to annul and cancel a mineral lease or leases, and in the alternative for judgment for stipulated cash consideration named therein. Suits consolidated, tried, and dismissed, and plaintiffs appeal, and appeals dismissed for acquiescence, and, pending the motions to dismiss before Supreme Court, R. T. Layne, alleging himself as a third party interested, attempted to intervene, and opposed dismissal of the appeals, which intervention was denied, whereupon he filed in court below a petition setting forth his interest as a third party and obtained an order of appeal. Motion to dismiss his appeal denied, and judgments appealed from in the consolidated cases reversed so far as affecting the rights of Layne, appellant, and leases executed by plaintiffs, Raines and Herndon, annulled so far as affecting right of appellant Layne, reserving to defendants the right to test the validity of the leases held by Layne.

Barret & Files, Thigpen & Herold, and Hampden Story, all of Shreveport, for appellant.

Alexander & Wilkinson, Wilkinson & Lewis, Hall & Bullock, Foster, Looney & Wilkinson, and F. J. Looney, all of Shreveport, for appellees.

Hall, Monroe & Lemann, of New Orleans, for appellees Brown and Dyer.

On Motion to Dismiss Appeal.

MONROE, C. J. The two plaintiffs brought separate suits against defendants to annul a mineral contract, or contracts, into which they had entered, which suits, after having been consolidated and tried, were dismissed; and, plaintiffs having appealed from the judgment of dismissal, the appeal was dismissed, on the ground of acquiescence. Pending the litigation, R. T. Layne appears to have entered into contractual relations with plaintiffs, which, according to his allegations, gave him an interest in the result, and he made an attempt to intervene in the case on the appeal, which having been unsuccessful, he appeared in the district court, and, as a third person, representing that he was aggrieved by the judgment which had been rendered, was allowed a devolutive appeal therefrom, which defendants now move to dismiss, on the grounds: (1) That he shows no appealable interest; (2) that he cannot appeal after plaintiffs have abandoned their appeal. Other grounds set up seem to merge into those stated.

1. By way of answer to the motion appellant alleges that he took a lease from plaintiffs of the property that was involved in the suit between them and defendants upon the

theory that the contract was void as to plaintiffs, and that he was and is, therefore, aggrieved by the judgment of the district court.

[1-3] The Code of Practice declares that third persons not parties to a suit may appeal from the judgment therein "when such third persons allege that they have been aggrieved by the judgment." Article 571.

The right of appeal thus accorded is, of course, subject to the constitutional limitations upon appellate jurisdiction. We are, however, reasonably satisfied from the showing made that the value of the interest claimed by appellant exceeds the amount required to confer such jurisdiction on this court. Whether his claim is well founded in law is a question concerning which we think he is entitled to a hearing on the merits. Mut. Life Ins. Co. v. Houchins, 52 La. Ann. 1137, 27 South. 657.

2. How far the acquiescence of the parties to a judgment will affect the rights of a third person appealing therefrom is a question that can better be determined after a hearing on the merits of the appeal than on a motion to dismiss it.

The motion to dismiss is therefore overruled. ·

DAWKINS, J.    This record presents for our decision the consolidated cases of D. H. Raines and Joe Herndon against the same defendants, suing for the cancellation of certain mineral leases upon lands situated in the parish of Caddo. They each allege that they executed certain documents purporting to grant to C. E. Dunson, one of the defendants, for a stipulated cash consideration, a lease of all the minerals lying in, under, and upon their respective properties, but that, as a matter of fact, nothing whatever was ever paid therefor; that after the signing by petitioners of said documents there was inserted therein without their knowledge or consent the following clause, to wit:

"It is agreed and understood by both the parties hereto that the drilling of a well for oil or gas either on the above-described .property or within a radius of two miles of the above-described property shall be in full satisfaction of the drilling clause under this lease"

—that in the alternative, if said clause was in said contracts at the time, it was purposely concealed from petitioners, who are unlearned and unlettered, and who were ignorant of the import thereof, and that, knowing this fact, the said Dunson read the contracts to them omitting said clause; that therefore the same were signed by petitioners through error and misrepresentation; and, that neither the said Dunson nor his agents or assigns ever commenced drilling upon said lands within the time provided in said leases. They further allege that said leases were null and void for the reason that the said Dunson never assumed any obligation thereunder, were never accepted by him, contained a potestative condition, and were lacking in mutuality.

Plaintiffs prayed that the said leases be annulled and canceled, and, in the alternative, for judgment for the stipulated cash consideration named therein, but which it is claimed was never paid.

Defendants appeared and admitted that no cash had been paid at the signing of said leases, and averred that the recited consideration had been inserted therein with the express understanding that Dunson was never to be liable therefor; that the clause quoted above and alleged by plaintiffs to have been inserted after signing was in said leases at the time, and well understood and agreed to by both parties, plaintiffs having themselves read the leases fully before signing. They further aver that wells were drilled on said lands within the periods stipulated, and, in addition thereto, another well was drilled within the limits provided in said leases, and which proved to be a producer; that plaintiffs' lands were located in what is known in

oil parlance as "wild cat" territory; that said leases were so worded and drawn with the express understanding and hope on the part of all concerned that a producing oil field might be discovered; and that said Dunson and his assignees accepted said leases and proceeded to drill and explore for oil and gas, all as provided therein.

Defendants prayed that plaintiffs' demands be rejected at their costs.

There was judgment for the defendants in both cases in the court below, and the plaintiffs applied for and perfected appeals to this court. Thereafter motions were filed here, before said cases had been argued on the merits, setting up that the plaintiffs had acquiesced in the judgments of the lower court, and praying for the dismissal of the appeals. The matter was then referred back to the district court for the purpose of taking testimony on that point, which having been done, the motions were submitted, and the appeals were dismissed on the ground of abandonment and acquiescence in the judgments of the lower court by plaintiffs. However, while the motions to dismiss were pending before this court, one R. T. Layne, alleging himself to be a third party interested in whatever judgment might be rendered in said cases, appeared and attempted to intervene and oppose the dismissal of said appeals. The intervention was denied.

Thereupon the said Layne filed in the court below petitions setting forth that, while the said causes were pending in the district court, and before any judgment had been rendered thereon, he had acquired from the plaintiffs therein, D. H. Raines and Joe Herndon, mineral leases upon the same property described in their petitions, and had paid therefor large sums in cash; that he was, therefore, vitally interested in said causes, and entitled to urge all of the grounds of attack made by the plaintiffs upon said lease contracts against the said C. E. Dunson and others; that in addition thereto he had paid the costs of the trial court, had obligated himself to pay the costs of appeal, and the fees of counsel in prosecuting the same, all as a part of the consideration for the leases to him. Wherefore he prayed that he be permitted, as a third party interested therein, to prosecute appeals from the judgments of the lower court, and accordingly orders of appeal were granted, and a new transcript was regularly and timely filed herein by the said Layne.

After the lodging of the new appeals here by Layne, defendants moved to dismiss the same on the grounds that the said Layne was without sufficient interest in the subject-matter to justify an appeal; that plaintiffs having abandoned their appeals, and Layne having taken a second mineral lease on the same property pendente lite with full knowledge of the pendency of said suits, having employed the counsel therein, and having used the said plaintiffs as his agents for the prosecution of said causes, and they having abandoned the same, that he was bound by the judgment of dismissal; that the judgment of the lower court did not in any wise pass upon the second mineral leases; and that the judgment of the lower court had become res judicata by the dismissal of the appeals of Raines and Herndon. Subsequently an amended motion to dismiss was filed on the ground that the prices of the leases sought to be annulled were less than $2,000; that the consideration for the second leases was less than $2,000; and that there was nothing in the record to show that the property in dispute was worth sufficient to give this court jurisdiction. Layne filed affidavits showing the amount in dispute to be largely in excess of $2,000.

The motions to dismiss were overruled, and we postponed, until a hearing could be had on the merits, the question of how far the acquiescence of the parties to a suit may affect the rights of a third person appealing therefrom.

### Plea of Res Judicata.

[4, 5] On April 2, 1919, defendants filed in this court a plea of res judicata, based mainly upon the grounds urged in the motion to dismiss which was overruled; that is, that Layne being the real party at interest, as set forth in his petition for appeal, having acquired whatever interest he has pending the litigation with full knowledge thereof, with an agreement on his part to pay the costs and expenses, and the judgment therein having become final as between the plaintiffs, in whose names he chose to litigate, and the defendants, the same is now res judicata and binding upon the said Layne.

In support of this proposition many authorities have been cited and quite persuasive arguments made, but in each and all of those cases the judgments became final, either by the definitive action of the courts or through the intervention of legal bars, such as failure to timely file the transcripts of appeal or other lapses or waivers of procedure, which had the same effect upon all concerned as final judgments regularly rendered. In none of them do we find that the courts have held that one litigant by acquiescence, collusion, or otherwise may bind or preclude other parties at interest against their consent or over their protests.

The case of Johnson v. Weld, 8 La. Ann. 126, was one where the plaintiff sued the defendant for a slave, and it was found that the same slave had been the subject of litigation between the defendant in that case and the bailee of the executor of the estate from which Johnson (through his wife) acquired title in the state of Tennessee, which litigation had gone regularly to final judgment in the courts of that state, and that the bailee or possessor of plaintiff's vendor in title had litigated the same questions involved later in the suit in this state with the full knowledge and consent of all concerned. It was held by this court that the plaintiff and his wife were parties privy with the executor of the estate, who was bound by the final judgment against his bailee; that the issues had become foreclosed in the courts of Tennessee; and that the same could not be reopened in this state. There was no suggestion of collusion or unfair dealing, nor was anything done by the bailee against the wish or over the protest of the executor, who was the silent, but real, party at interest, but on the contrary, the litigation was prosecuted in the courts of Tennessee, with his full knowledge, acquiescence, and consent to finality.

In Graugnard v. Forsyth, 44 La. Ann. 327, 10 South. 799, there was an express stipulation to avoid other litigation, and to await the result of the suit in which it was made, and very naturally the parties were held to their agreement.

Succession of Theriot, 120 La. 386, 45 South. 486, was a case in which an attorney, representing an heir who had opposed the final account of the administrator sought to take an appeal in his own name after the appeal of his client had been dismissed as having been filed too late. His interest in the subject-matter of the litigation was based upon the allegation that he had had an agreement with the mother of his client, from whom the client inherited, and who was the partner in community with the deceased, whose succession the administrator represented, by which he was to receive one-half of whatever amount was recovered in a contest as to whether certain property was paraphernal or belonged to the community. It was held that his rights were measured by the judgment against his client, and that, this having become final through failure to file the transcript within the time allowed by law, he could not prosecute a separate appeal. In other words, not having recovered anything, he was not entitled to receive anything under the judgment, and in effect it was held that the matter could not be reopened for the pur-

pose of determining whether or not, if the appeal had been properly prosecuted, a recovery might have been had by the client, and to tax the estate with one-half thereof as his fee when the matter had become final against his principal and client.

The remaining cases were cited as supporting the principles laid down in the cases above referred to, and we deem it unnecessary to review them here.

We think that Layne's rights must be determined as of the date of his lease contracts, which, according to the record, were taken just a few days before the judgment of the lower court was rendered, after the case had been tried and submitted, but before the decision had been announced. Had the cases continued to final judgment under the circumstances in which the original appeals were perfected and lodged here, we think Layne would have been concluded thereby; for, while not a party on the face of the record, in reality he was, and it had become immaterial to Raines and Herndon who explored their lands, so long as the same were developed and they received their one-eighth royalty. However, plaintiffs received from Layne substantial sums of money for the leases given to him, and divested themselves of the power to alter the extent of his rights as they existed at the moment his contracts were given, and could not by subsequent dealing with the defendants give to the original leases any greater force or effect than they had at that time, especially where those with whom they sought to deal were aware of the interest of Layne which had intervened. That the agreement which was made by defendants with Raines and Herndon for the dismissal of their appeals was made after Layne's contracts were obtained and recorded, and with full knowledge on the part of the defendants, is not disputed.

We are of the opinion that the plea of res judicata is without merit, and the same is accordingly overruled.

[6] R. T. Layne, appellant, attaches to his petitions for appeal certified copies of the notarial leases from the original plaintiffs,. D. H. Raines and Joe Herndon, wherein it appears that the former, for the price of $1,000 cash, and the latter for the sum of $1,400 cash, with other stipulations and obligations assumed on the part of Layne, leased to the appellant herein the identical lands described in the original contracts given C. E. Dunson, and which latter contracts were assailed by the said Raines and Herndon in the inception of this litigation. Layne's leases are dated July 25, 1917, and he bases his claim of interest in the outcome of these consolidated suits upon the proposition that, if the judgments of the lower court are allowed to stand, they will have the effect of validating the original leases to Dunson and thereby deprive him of his rights under his subsequent contracts. With this showing of interest, he seeks a reversal of the judgment of the court below, in order that his rights may take first rank upon the property.

Appellant relies upon article 571 of the Code of Practice as supporting his right to have the judgments appealed from reviewed, which article is as follows:

"The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment."

An examination of the jurisprudence under this article convinces us that wherever the appellant alleges and shows that he has an appealable interest, which may be affected by the judgment, a case is disclosed which will justify this court in passing upon the merits of the cause in so far as it may affect the interest of the appellant. It is not necessary that that interest should have been previously adjudicated, but sufficient that it reasonably appear, and in many instances we have remanded the cases to the lower courts for

a more complete ascertainment thereof; in other cases we have passed upon the merits of the causes in which the appeals were taken and reserved to the parties the right to determine contradictorily the claims of such third persons. Mutual Ins. Co. v. Costa, 32 La. Ann. 3; Bonnet v. Judge, 29 La. Ann. 397; Succession of Henderson, 2 Rob. 391; Byerly v. Judge, 23 La. Ann. 768; Belden v. Markey et al., 21 La. Ann. 743; Fazende v. Flood, 24 La. Ann. 426; Pecot v. Judge, 27 La. Ann. 184; Rathbone v. Parish of St. James, 28 La. Ann. 324; Succession of Haley, 49 La. Ann. 709, 22 South. 251; Succession of Bothick, 110 La. 109, 34 South. 163; N. O. T. & M. Co. v. State Board of Appraisers, 135 La. 729, 66 South. 160; Garland's Code of Practice (4th Ed.) p. 421.

We think the appellant makes sufficient showing of interest to justify us in passing upon the merits of the cases as between the original litigants.

## On the Merits.

[7] We quote one of the original leases (the other being identical, except as to price and description of the property) as follows:

"State of Louisiana, Parish of Caddo.

"Know all men by these presents that I, D. H. Raines, Vivian, Caddo parish, Louisiana, the party of the first part, in consideration of the sum of $600, paid by C. E. Dunson, party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and do by these presents, grant, bargain, sell, and convey, unto the said party of the second part, his heirs and assigns, all of the oil and gas in and under the following described land, together with the rights of ingress and egress at all times for the purpose of drilling, mining, and operating for gas, oil, or water, and to conduct all operations for gas, oil, or water, to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transportation of oil, gas, and water, with the right to use sufficient gas, oil, or water to operate said property, and shall have the right to re-move all machinery, fixtures, and improvements placed thereon at any time, reserving, however, to the party of the first part the equal one-eighth of all the oil produced and saved upon said premises, to be delivered in any pipe line to which well or wells may be connected to the credit of the party of the first part.

"If gas is found, second party agrees to pay to the first party two hundred ($200.00) dollars for the product each year, payable quarterly for the product of each well while the same is being used off the premises; and party of the first part, by furnishing his own pipe and connections, shall have sufficient gas free of cost for use in one dwelling house on the premises, so long as the gas is utilized off the premises, at his own risk.

"No well shall be drilled within 200 feet of any building now on said premises without the consent of the first party. [Here follows description of land.]

"To have and to hold the above-described premises unto the party of the second part, his heirs and assigns, on the following conditions: In case operations for either the drilling well for oil or gas is not commenced and prosecuted with due diligence within ninety days from this date, then this grant incumbrance shall become immediately null and void as to both parties, provided that second party may prevent such forfeiture from quarter to quarter for one year by paying to the first party the sum of $600 per year until such well is commenced, and it is agreed that the commencement of a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease, which payments can be made at Vivian State Bank of Vivian, or payable direct to party of the first part.

"In case the party of the second part should bore and discover either oil or gas, then in that event this grant incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil and gas may be produced in paying quantities thereon.

"This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement.

"It is agreed and understood by both parties hereto that the drilling of a well for oil or gas, either on the above-described property or within a radius of two miles of the above-described property shall be in full satisfaction of the drilling clause under this lease.

"It is understood between the parties to this agreement that all conditions between the par-

ties hereunto shall extend to their heirs, executors, administrators, and assigns.

"Witness our hands this 27th day of October, A. D. 1916.        [Signed]  D. H. Raines.

"S. P. Harrell.

"T. C. Searacy."

This document was not signed by Dunson, but was proven up by the witness Harrell, and recorded in the conveyance office of Caddo parish on December 20, 1916, in Book 112, page 377. On its face, with the stipulated cash consideration, it would appear to be a commutative contract, the vendee having paid a fair consideration for the right to drill for oil and gas, although there is no obligation assumed therein on that score. However, it is charged in the petitions of Raines and Herndon that no amount whatever was paid, and this is admitted by defendants; so that at the time of their execution the leases stood, as between the parties, just as if the clause reciting the cash payment were not written therein. The contract was unilateral. Dunson was not bound; neither were Raines and Herndon. R. C. C. arts. 1765 and 1766; Union Sawmill Co. v. Mitchell, 122 La. 900; 48 South. 317; Long v. Sun Co., 132 La. 601, 61 South. 684; In re Bristo, 139 La. 312, 71 South. 521.

Counsel for defendants appear to concede that the contracts were nothing more than licenses or offers to permit Dunson to develop the lands of plaintiffs for oil and gas, and were not binding upon the lessors until the lessees commenced in good faith to exercise the same. But they contend these offers were subsequently ripened into binding contracts by performance on the part of their client.

[8, 9] The record discloses that, after taking the leases from Raines and Herndon, Dunson formed a sort of copartnership with the other defendants herein, and through their efforts a well was bored on the property of Herndon to a depth of some 1600 feet, and which produced only salt water. This well was begun early in December and completed about the middle of January, at which time the machinery and materials were moved off of Herndon's land, and boring was commenced on the property of one Hobbs, on which defendants held a contract similar to those of plaintiffs. This latter well proved to be a producer. No further efforts were made upon the lands of Herndon, and none whatever upon those of Raines, until a few days before these suits were filed on May 30, 1917. However, the Hobbs well was within 2 miles of the lands of both Raines and Herndon, and it is claimed that this fact, together with the boring of the first well on the latter's land, had the effect of converting the leases into contracts as to both plaintiffs, because of the following clause therein, to wit:

"It is agreed and understood by both parties hereto that the drilling of a well for oil or gas either on the above-described property, or within a radius of two miles of the above-described property, shall be in full satisfaction of the drilling clause under this lease."

In reply plaintiffs say that the clause just quoted is a forgery; that it was not in the leases when signed by them, but, if it was, the same was purposely concealed from petitioners, who are ignorant colored men, and was omitted from the reading of the contract by the said Dunson to them at the time they were signed. While both of the plaintiffs swear that this provision was not in the contracts, and there are other suspicious and corroborating circumstances surrounding the matter, we do not think that the forgery has been established with that degree of certainty which would justify us in treating the provision as not written in the documents. Dunson and Harrell swear just as positively that it was in the leases, and in the light of all the evidence we think it probable that the documents were signed with very little attention to detail, and without Raines and Herndon appreciating that they were doing.

anything more than giving leases upon their properties with the view of having them explored for oil and gas. These are equitable considerations which we may take into account in determining the effect to be given to the stipulation in view of the unilateral character of the leases and in weighing the subsequent conduct of the defendants. There was no more obligation on the part of Dunson to bore on other lands than there was upon the lands of Raines and Herndon; in fact, the clause quoted did not provide that, if a well should be bored by Dunson or his assigns, the same should be in satisfaction of his obligations to bore under the leases, but made it equally applicable in event a well were drilled by third persons over whom he might have no control. It was therefore null and void as to the plaintiffs, just as the other provisions of the leases. R. C. C. arts. 2023, 2024, 2034, and 2035. If the leases had been signed by Dunson, and the other stipulations therein by him to be performed had been assumed, the clause referred to would not have been binding. It was a casual and potestative condition pure and simple.

It is true that we have held that, notwithstanding a lessee may not bind or obligate himself to explore for oil and gas, yet, if it be done without objection on the part of the lessor, and resultant benefits flow to him therefrom, he cannot be heard thereafter to urge the want of mutuality. This is, however, upon the theory that in standing by and permitting the lessee to perform acts and make expenditures which he could have prevented by timely protest the want of mutuality is waived, and to the extent executed the leases become commutative contracts. Busch-Everett Oil Co. v. Vivian Oil Co., 128 La. 887, 55 South. 564; Hudspeth v. Producers' Oil Co., 134 La. 1013, 64 South. 891. On the other hand, as to a stipulation of the nature above quoted, the lessor would have no right to question or prevent the boring on lands of other persons, so as to escape the effect thereof, and such a clause would be particularly harsh, when, under the terms of the lease, the boring would be a full discharge of the obligation to drill or to pay rentals, and thereby tie up the lands of the lessor for a period of 25 years or indefinitely, making it possible to extract all the minerals from the field without requiring the development of his property. We do not mean to hold that a valid contract cannot be made, in which it may be provided, with the view of developing a new field, that the boring of a well within a specified territory shall be part of a valid consideration, where there is an accompanying obligation to develop the property of the lessor in event of the discovery of oil and gas, and in which it is provided that such rights may be prolonged for a reasonable time upon the payment of adequate rentals. But that is not the case here. Berl v. Kehoe, 130 La. 1020, 58 South. 864; Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 South. 253; Murray v. Barnhart, 117 La. 1023, 42 South. 489; Jennings-Heywood Oil Syndicate v. Houssiere-Latrielle Oil Co., 119 La. 851, 44 South. 481; Goodson v. Vivian Oil Co., 129 La. 955, 57 South. 281.

As stated elsewhere in this opinion, there was never any effort made to develop the land of Raines until long after the expiration of the three months' stipulated, and after he had made formal demand on defendants to cancel said lease, when they placed some materials for the erection of a derrick on the ground a few days before the filing of these suits. The situation is no better as to Herndon. While defendants did bore one well upon his property, it produced salt water and was abandoned. Defendants removed the machinery and other materials to the property of Hobbs, as it was provided they might do at their pleasure, and were under no further obligation to explore Herndon's lands. This was in January, and they made

no further efforts in that direction until he, like Raines, had demanded the cancellation of his lease, when a derrick was erected upon his property just prior to the filing of his suit. There was no reasonable prosecution of the work, nothing had been paid to him, and it was left entirely to defendants as to whether they should make any further efforts. According to the lease, after boring this well, they had the privilege of holding Herndon's lands for 25 years, without paying any rental, and with no obligation on their part to pursue the development, for, in the first paragraph of the lease it was provided that Dunson "shall have the right to remove all machinery, fixtures, and improvements placed thereon at any time," and in the fifth paragraph "it is agreed that the commencement of a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease."

The leases therefore were null and void as between the original parties, Raines and Herndon, on the one part, and Dunson, on the other, and it follows, that if Layne's leases are valid, they must take precedence over the rights of Dunson or his transferees, as well as any one acquiring subsequent thereto.

It is therefore ordered, adjudged, and decreed that the judgments appealed from in these consolidated cases be, and the same are hereby, annulled and reversed in so far as they affect the rights of R. T. Layne, appellant; and, it is now further ordered, adjudged, and decreed that the lease executed by D. H. Raines to and in favor of C. E. Dunson, of date October 27, 1916, and recorded on December 20, 1916, in Notarial Book 112, page 377, of the conveyance records of Caddo parish, and the lease from Joe Herndon to C. E. Dunson, dated October 23, 1916, and recorded on December 20, 1916, in Notarial Book 112, page 389, of the conveyance records of Caddo parish, La., be, and the same are hereby, avoided and annulled, in so far as they affect the rights of the appellant, R. T. Layne, reserving to the defendants or their assigns the right to test the validity of the leases held by Layne, and which form the basis of this appeal. It is further ordered that the defendants and appellees pay the costs of both courts.

MONROE, C. J., not having heard the argument, takes no part.